## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ABIGAIL ROTH,

      Plaintiff,

   v.

CLEARCHOICE MANAGEMENT
SERVICES, LLC,

      Defendant.

No. 1:21-cv-20440-NLH-EAP

**OPINION**

**APPEARANCES**:

ABIGAIL ROTH
1733 WALLACE STREET, APT. 1F
PHILADELPHIA, PA 19130

   *Plaintiff Appearing Pro Se.*

ANASTASIA ANNE STYIILANOU, ESQ.
LAUREN JILL MARCUS, ESQ.
LITTLER MENDELSON, P.C.
ONE NEWARK CENTER,
1085 RAYMOND BOULEVARD, 8TH FLOOR
NEWARK, NJ 07102

   *On behalf of Defendant ClearChoice Management Services,*
   *LLC.*

**HILLMAN**, District Judge

   This matter is presently before the Court by way of
ClearChoice Management Services, LLC's ("Defendant") Motion to
Dismiss or in the Alternative for a More Definite Statement
regarding Abigail Roth's ("Plaintiff") claims of sexual
harassment and assault at her former workplace.  (ECF No. 1 at

10-11).  For the reasons expressed below, to the extent that
Plaintiff attempts to allege a claim under Title VII,
Defendant's Motion to Dismiss will be granted and Plaintiff will
have thirty (30) days to amend her Complaint to address the
deficiencies noted below.  To the extent that Plaintiff alleges
a claim under the NJLAD, Defendant's Motion to Dismiss will be
denied.

## BACKGROUND

Plaintiff worked for Defendant from February 11, 2019 to
October 7, 2019.  (Id.).  Plaintiff alleges that a coworker
began to physically assault and sexually harass her shortly
after her hire.  (Id. at 10, 11).  Plaintiff alleges that these
assaults would take place at the required morning staff
meetings, where the coworker would rub her back and shoulders.
(Id. at 10).  Plaintiff asserts that she was required to meet
with this coworker one-on-one with the door closed where he
purportedly "stared and gawked" at Plaintiff and "undressed
[her] with is eyes."  (Id.).  Before the beginning of May 2019,
another coworker pulled Plaintiff aside, allegedly asking and
noting that the interactions were not welcomed and allegedly
stated that she would speak to the offending coworker.  (Id.).
Plaintiff asserts that the harassment continued, and on May 30,
2019, she was allegedly forced to accept a ride home from the
offending coworker after a cancelled training which caused

emotional distress to Plaintiff.  (Id.).  Plaintiff thereafter
brought these issues to the attention of a Regional Development
Manager in July of 2019.  (Id. at 11).  Plaintiff alleges that
Defendant knew of the unwelcomed conduct and did nothing to
ameliorate or correct the offending coworker's behavior,
creating a hostile work environment, anxiety, and mental anguish
for Plaintiff.  (Id.). Plaintiff alleges that she was
constructively discharged on October 7, 2019, based on the
foregoing.  (Id.).

Procedurally, Defendant removed the instant case from state
court on December 9, 2021 (ECF No. 1).  This Court entered an
Order to Show Cause on December 20, 2021, for the Defendant to
amend their Notice for Removal to address the ambiguity of
Defendant's citizenship.  (ECF No. 8).  Defendant's Amended
Notice for Removal filed on January 4, 2022, cured the ambiguity
with regard to Defendant's citizenship.  (ECF No. 11).
Defendant subsequently filed a Motion to Dismiss pursuant to
Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") or in
the Alternative For a More Definite Statement pursuant to
Federal Rule of Civil Procedure 12(e) ("Rule 12(e)") on January
13, 2022.  (ECF No. 12).  On February 4, 2022, Plaintiff filed a
letter which is broadly construed as opposition to Defendant's

motion.  (ECF No. 14).[1]  Finally, Defendants replied on February
10, 2022.  (ECF No. 15).  Given this, the matter is ripe for
adjudication.

### DISCUSSION

### I.    Subject Matter Jurisdiction

This matter was properly removed to this Court pursuant to
28 U.S.C. § 1446.  This Court has jurisdiction pursuant to 28
U.S.C. § 1332, in that the parties are of diverse citizenship.
(ECF No. 11).

---

[1] The Court notes that Plaintiff's letter construed as a motion
in opposition, does not address the Motion to Dismiss outside of
a single paragraph stating that her complaint does not need to
specify the legal theories giving rise to her claims and that
her Complaint complied with Federal Rule of Civil Procedure 8.
(ECF No. 14 at 1).  The letter focuses primarily on Plaintiff's
opposition to removal, stating that removal was improper and
argues that Defendant's Amended Notice of Removal was deficient.
(Id.).  The Court finds that Defendant's Amended Notice of
Removal (ECF No. 11) cured the deficiencies noted in Defendant's
original Notice of Removal (ECF No. 1) and properly clarified
Defendant's citizenship for diversity jurisdiction.  As
Defendant explained in its reply, the citizenship of a limited
liability company is determined by the citizenship of its
members and is not based on the "domicile" or "contacts" within
a state it does business, and therefore the "domicile" of any of
the limited liability companies in the organization structure of
the Defendant is irrelevant to the diversity jurisdiction
analysis.  (ECF No. 15 at 2).  Ultimately, the sole member at
the end of the single member limited liability chain, Colorado
Purchaser, Inc., is incorporated in Delaware and has its
principal place of business in New York, making it a diverse
party apart from the Plaintiff, a citizen of Pennsylvania.
(Id.).  It is noted that Plaintiff was employed in New Jersey
when the alleged acts took place.  (Id.)  To the extent that
Plaintiff's opposition was intended to be a motion to remand for
lack of subject matter jurisdiction, that motion is DENIED.

## II.  <u>Standard for Motion to Dismiss Pursuant to Rule 12(b)(6)</u>

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. <u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957); <u>Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.</u>, 40 F.3d 247, 251 (7th Cir. 1994); and then citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should

identify allegations that, because they are no more than

conclusions, are not entitled to the assumption of truth; and

(3) when there are well-pleaded factual allegations, a court

should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief.  Malleus v.

George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v.

Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations,

quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks

"not whether a plaintiff will ultimately prevail but whether the

claimant is entitled to offer evidence to support the claim."

Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416

U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our

decision in Twombly expounded the pleading standard for 'all

civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d

203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in

the coffin for the 'no set of facts' standard that applied to

federal complaints before Twombly."). "A motion to dismiss

should be granted if the plaintiff is unable to plead 'enough

facts to state a claim to relief that is plausible on its

face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at

570).

A court in reviewing a Rule 12(b)(6) motion must only

consider the facts alleged in the pleadings, the documents

attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

**III.  Standard for Motion for a More Definite Statement pursuant to Rule 12(e)**

Rule 12(e) provides, in pertinent part: "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Defendants must file a motion pursuant to Rule 12(e) "before filing a responsive pleading and must point out the defects complained of and the details desired."  Fed. R. Civ. P. 12(e). In the Third Circuit, a motion for a more definite statement is granted when "the pleading is too vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to [itself]."  MK Strategies, LLC

v. Ann Taylor Stores Corp., 567 F.Supp.2d 729, 736-37 (D.N.J.
2008).  Rule 12(e) motions are a remedy for an unintelligible
pleading, but it is not to be utilized to correct a pleading
simply lacking in detail.  Premier Payments Online, Inc. v.
Payment Sys. Worldwide, 848 F. Supp. 2d 513, 522 (E.D. Pa. 2012)
(citation omitted).  These motions are generally disfavored "in
light of the liberal pleading standards under the Federal
Rules," Marley v. Donahue, No. 14-1597, 2014 WL 5152618, at *1
(D.N.J. Oct. 14, 2014) (citation omitted) and can be prone to
abuse by defendants because it could require more specificity
than required by Federal Rule of Civil Procedure 8(a)(2),
therefore such motions should only be granted under "strictest
necessity."  Gittens v. Experian Info. Sols., Inc., No. 13-5534,
2014 WL 1744851, at *2 (D.N.J. Apr. 30, 2014).  12(e) motions
are within the sound discretion of the district court.  Clark v.
McDonald's Corp., 213 F.R.D. 198, 232 (D.N.J. Mar. 3, 2003).

Moreover, courts must liberally construe pleadings that are
filed pro se.  Erickson v. Pardus, 551 U.S. 89, 94 (2007)
(quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  Thus, "a
pro se complaint, however inartfully pleaded, must be held to
'less stringent standards than formal pleadings drafted by
lawyers.'"  Id. (internal quotation marks omitted).  See also
Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003) ("[The
Court will] apply the applicable law, irrespective of whether

the pro se litigant has mentioned it by name."). But while pro se pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim," Owens v. Armstrong, 171 F. Supp. 3d 316, 328 (D.N.J. 2016) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013)), and pro se litigants are not exempt from complying with federal pleading standards. See Thakar v. Tan, 372 F. App'x 325, 328 (3d Cir. 2010).

## IV.  **Analysis**

In her Complaint, Plaintiff broadly alleges discrimination claims against Defendant. Although she does not articulate her allegations under specific statutes or legal theories, her Complaint can be construed to plead under Title VII, 42 U.S.C. § 2000e-2, or the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-12(a). See Sims-Felton v. Hegedus, No. 11-4923, 2013 U.S. Dist. LEXIS 61183, at *16 (D.N.J. Apr. 30, 2013) (citing Estelle v. Gamble, 429 U.S. 97, 107 (1976)). While Defendant raised several elements of Plaintiff's Complaint that could be clearer, the Court finds that Plaintiff's allegations against Defendant are specific enough to enable them to provide a good faith response. Therefore, the Court will deny Defendant's Motion in the alternative pursuant to 12(e) and will proceed to analyze the claims Plaintiff has alleged pursuant to 12(b)(6) below.

a. **Hostile Work Environment Claim**[2]

To establish a prima facie hostile work environment claim, a plaintiff must demonstrate: (1) she suffered intentional discrimination because of their race or sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race or sex in that position; and (5) the existence of respondeat superior liability.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir. 1996).  "The first four elements establish a hostile work environment, and the fifth element determines employer liability."  Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013).

To violate Title VII, the harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment that

---

[2] The standard under the NJLAD is phrased slightly differently, but the results are subsumed in the Title VII analysis.  To establish a prima facie hostile work environment claim under the NJLAD, a plaintiff must show that the harassment: (1) "would not have occurred but for the employee's gender; and it was (2) severe or pervasive enough to make a (3) reasonable woman believe that (4) the conditions of employment are altered and the working environment is hostile or abusive."  Lehmann v. Toys 'R' Us, 132 N.J. 587, 603-04 (N.J. 1993); Erickson v. Marsh & McLennan Co., 117 N.J. 539, 549-50, (N.J. 1990) (explaining that New Jersey Supreme Court has adopted methodology of proof used in Title VII cases for use in LAD cases); see also Martinez v. City of Union City, No. 21-11111, 2021 WL 5195708, at *4 n.5. (D.N.J. Nov. 8, 2021).

permeates the workplace." Meritor Savings Bank, FSB v. Vinson,

477 U.S. 57, 65 (1986)); see also Martinez, 2021 WL 5195708, at

*4.  The Third Circuit has held that "harassing conduct may be

either severe or pervasive to qualify under the second prong,"

of the analysis and that "even a single instance of harassment

can suffice to state a claim." Castleberry v. STI Grp., 863

F.3d 259, 264 (3d Cir. 2017).  However, "[i]n evaluating a

hostile work environment claim under both Title VII . . . and

the NJLAD, both the Supreme Court and the Third Circuit have

been clear that 'offhand comments, and isolated incidents

(unless extremely serious)' are not sufficient." Nuness v.

Simon & Schuster, Inc., 221 F. Supp. 3d 596, 601 (D.N.J. 2016)

(quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788

(1998)).

    To determine whether a work environment is hostile, "courts

look to totality of the circumstances, which should include 'the

frequency of the discriminatory conduct; its severity; whether

it is physically threatening or humiliating, or a mere offensive

utterance, and whether it unreasonably interferes with an

employee's work performance.'" Nuness v. Simon & Schuster,

Inc., 221 F. Supp. 3d 596, 601 (D.N.J. 2016) (quoting Mandel,

706 F.3d 157, 168 (3d Cir. 2013)).

    With the foregoing in mind, this Court will now review

Plaintiff's claim of harassment through each prong to determine

if the Complaint has sufficiently alleged facts to support a
claim of sexual harassment under Title VII and the NJLAD.

First, Plaintiff alleges that she suffered intentional
discrimination because of her sex.  Plaintiff alleges that her
co-worker subjected her to unwelcomed physical contact by
"rubbing her back and shoulders" during required morning
meetings, "stared . . . at [her] chest/breasts and undressed
[her] with his eyes," and that these actions were targeted to
her as a woman.  (ECF No. 1 at 10-11).  The Court finds that
this prong has been satisfied at the motion to dismiss stage.

Second, the Court must assess whether the discrimination
alleged by Plaintiff was pervasive and regular.  Courts evaluate
all instances of harassment, discrimination, or intimidation as
it relates to the work environment as a whole rather than in
isolation.  See Durham Life Ins. Co. v. Evans, 166 F.3d 139, 155
(3d Cir. 1999).  Plaintiff's Complaint demonstrates the
regularity of the unwelcomed conduct on its face: Plaintiff
alleges here that the unwelcomed physical conduct occurred
during the required morning meetings where the "assaults" were
"routine and repeated." (ECF No. 1 at 10).  Plaintiff further
alleged that she was subjected to more than one required closed-
door meeting with this coworker alleging that his staring made
her feel unsafe.  (Id.).  The allegations as plead demonstrate
pervasiveness in that the unwelcomed physical contact began

shortly after her hire, that the meetings where this took place occurred daily, and the unwelcomed conduct continued through the entirety of her employment with Defendant.  (Id. at 10-11); compare Reyes v. McDonald Pontiac-GMC Truck, 997 F. Supp. 614, 618 (D.N.J. Apr. 8, 1998) ("Plaintiff recounts several isolated incidents of conduct . . . [t]he few instances illuminated by plaintiff took place on two or three days over nearly a month's time.").

Third, the discrimination detrimentally affected Plaintiff. Plaintiff alleges that the nonconsensual encounters with the coworker "became a source of severe mental anguish and anxiety" and that, on at least one occasion, the coworker's behavior left her "terrified."  (ECF No. 1 at 10).  Plaintiff alleges that the behavior she was subjected to "constructively discharged [her] from her position."  (Id. at 11).

Plaintiff's recounting satisfies this requirement because it is a subjective one, and "a relatively low hurdle to clear." Grazioli v. Genuine Parts Co., 409 F. Supp. 2d 569, 578 (D.N.J. Dec. 30, 2005) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 22, (1993)).  The plaintiff is only required to "establish that she subjectively perceived her work environment to be hostile or abusive, and not that she suffered concrete psychological harm."  Martinez, 2021 WL 5195708 at *5 (internal citations and quotations omitted).

Next, the Court must determine if the discrimination as alleged by Plaintiff would detrimentally affect a reasonable person of the same sex in that position by evaluating several factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Ivan v. County of Middlesex, 595 F. Supp.2d 425, 451 (D.N.J. Jan. 21, 2009) (citing Hargrave v. County of Atlantic, 262 F. Supp.2d 393, 413 (D.N.J. 2003). Such "analysis must focus on the totality of the circumstances." Hargrave, 262 F. Supp.2d at 413-14 (internal citations omitted).

Here, Plaintiff alleges that the unwelcomed physical contact occurred repeatedly, in front of others while at required meetings which caused "severe mental anguish and anxiety," which this Court finds sufficient at this stage to demonstrate a frequency that would perturb a reasonable person. (ECF No. 1 at 10). The conduct was open and obvious enough to others that in May 2019, the office manager pulled Plaintiff aside to ask Plaintiff if the alleged behavior was "undesired and whether they made Plaintiff uncomfortable" to which Plaintiff confirmed it was unwelcomed. (Id.). Because the unwelcomed conduct occurred during meetings that Plaintiff's job required her to participate in on a regular basis, such

14

allegations suggest that the conduct was sufficient to disrupt a reasonable person's workplace performance.  (Id.).  Moreover, Plaintiff has alleged at least one incident involving a car ride that left her "terrified," suggesting at least some indicia of physically threatening behavior.  (Id.).  Given the overall context of the alleged harassment happening at routine and required meetings, both in front of others and "behind closed doors," (Id.) the Court finds that Plaintiff's pleading satisfies the fourth prong.

Finally, the Court must determine if, in the instant case, Plaintiff has alleged the existence of respondeat superior liability.  "The basis of an employer's liability for a hostile work environment claim depends on whether the harasser is the victim's supervisor or coworker." Mandel, 706 F.3d at 169 (citing Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009)).  An employer is vicariously liable to a victimized employee "for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee" or if "the person charged with creating the hostile environment is the plaintiff's co-worker, and not a supervisor, liability exists [only] where the [employer] knew or should have known of the harassment and failed to take prompt remedial action." Hitchens v. Montgomery Cty., 278 F. App'x 233, 235-36 (3d Cir. 2008) (internal

15

citations and quotations omitted).

In the instant matter, Plaintiff clearly alleges that the Defendant was "on notice" of the alleged harassment.  First, the unwelcomed physical contact would occur at daily meetings where various attendees purportedly witnessed the behavior including the office manager, who purportedly pulled Plaintiff aside after one meeting in the beginning of May, confirmed the unwelcomed nature of the conduct, and allegedly said that she would "address the concern" with the problematic coworker.  (ECF No. 1 at 10).  Plaintiff alleges that she went to the office manager a second time on May 30, 2019 to inform the manager of the car ride that left her "terrified."  (Id.).  Plaintiff alleges that when the behavior continued unabated, she had a "sit-down meeting" in July with the regional development manager to explicitly address her concerns and told her that "Plaintiff did not feel comfortable alone with [the coworker] in his office." (Id. at 11).  Given this, at the motion to dismiss stage, Plaintiff has alleged sufficient facts to satisfy the fifth element of a prima facie case of harassment.

Given the above, Plaintiff has stated sufficient facts to state a plausible claim of sexual harassment.  However, the Court must also address the additional procedural requirements to bring such claims to Federal Court under Title VII and the NJLAD.

**b. Title VII**

Title VII requires that plaintiffs exhaust all administrative remedies, (Kopko v. Lehigh Valley Health Network, 776 Fed. App'x 768, 773 (3d Cir. 2019)), and timely file a complaint after that process is complete in order to bring a claim to Federal Court.  Here, Plaintiff does not address in her Complaint whether or not she has timely filed with the Equal Employment Opportunity Commission ("EEOC") or received a right-to-sue letter.  Timely filing with the EEOC, receiving a right-to-sue letter, and filing a case in Federal court within the statute's filing deadline are necessary prerequisites to any Title VII suit.  Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 469, (3d Cir. 2001) (stating that under Title VII, before a plaintiff can file suit for race discrimination, he must first file a charge with the Equal Employment Opportunity Commission within 180 days of the occurrence of the alleged unlawful employment practice); Anjelino v. New York Times Co., 200 F.3d 73, 87 (3d Cir. 1999) (stating that a right-to-sue letter is required before a plaintiff can bring a Title VII suit).

Because Plaintiff has failed to demonstrate compliance with these requirements, her Title VII claim must be dismissed. However, because there is some possibility that Plaintiff could

provide additional details to properly assert her Title VII claims that dismissal will be without prejudice.  Cunningham v. Albright College, No. 20-01429, 2020 WL 7640192, at *6 n.8 (E.D. Pa. Dec. 23, 2020).  Given the strict timeliness requirements of Title VII claims, if Plaintiff's claim was dismissed and she was to refile, Plaintiff could become precluded from bringing her claim.  Williams v. Township of Lakewood, No. 17-11401, 2020 WL 7391009, at *6 (D.N.J. Dec. 15, 2020) ("The Third Circuit has strictly construed [Title VII's filing deadlines] and held that, in the absence of some equitable basis for tolling, a civil suit filed even one day late is time-barred and may be dismissed.") (internal citation and quotations omitted).  Therefore, the Court will grant Plaintiff thirty (30) days to amend her Complaint to address the deficiencies set forth in this Opinion related to a Title VII claim if she is able to do so.

### c. NJLAD

All NJLAD claims have a two-year statute of limitations. See Anjelino, 200 F.3d at 68 (citing Montells, 133 N.J. at 627 ("[T]he Montells court found that the two-year statute of limitations would apply uniformly to all NJLAD claims[.]").  However, courts have recognized that some conduct covered by the NJLAD is "continuing in nature" and inappropriate to measure "the running time" of the statute of limitations period from the first occurrence of the discrimination.  Bronze Shields Inc. v.

New Jersey Dept. of Civ. Serv., 667 F.2d 1074, 1081 (3d Cir
1981).  The continuing violation doctrine is the equitable
exception to the application of the statute of limitations that
may apply "when a defendant's conduct is part of a continuing
practice," Snyder v. Baxter Healthcare, Inc., 393 F. App'x 905,
909 (3d Cir. 2010) (quoting Brenner v. Local 514, United Bhd. of
Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir.
1991) (internal quotation marks omitted), such as in a case of
repeated sexual harassment.

     Where there is a continuing practice, "an action is timely
so long as the last act evidencing the continuing practice falls
within the limitations period." Id.  For the Court to find a
continuing practice of conduct, "a plaintiff must establish that
the defendant's conduct is more than the occurrence of isolated
and sporadic acts." West v. Philadelphia Elec. Co., 45 F.3d
744, 755 (3d Cir. 1995) (internal quotations and citation
omitted) (overruled in part on other grounds).  To establish a
continuing practice, the Court must analyze two factors: whether
the violations were related in subject matter and whether the
acts were recurring. Bennett v. Susquehanna County Children &
Youth Servs., 592 Fed. App'x 81, 84 (3d Cir. 2014).

     Regarding the timeliness of a NJLAD claim, Plaintiff's
claim would not be time-barred with the application of the
continuing violations doctrine.  Plaintiff's claim is emblematic

of the continuing violations doctrine: the alleged harassing behaviors were repeated over the course of Plaintiff's employment with Defendant and were all related to Plaintiff's sex.  Plaintiff filed her claim in state court on October 7, 2021, which was within the two-year statute of limitations on NJLAD claims based on the last act, her constructive discharge on October 7, 2019.  (ECF No. 1 at 10).

Given this, the Court finds that Plaintiff has alleged sufficient facts for a NJLAD claim to survive at this stage.

## CONCLUSION

For the reasons expressed above, to the extent that Plaintiff attempts to allege a claim under Title VII, Defendant's Motion to Dismiss or in the Alternative for a more Definitive Statement, (ECF No. 12) will be granted and Plaintiff will have thirty (30) days to amend her Complaint to address the deficiencies noted above.  To the extent that Plaintiff alleges a claim under the NJLAD, Defendant's Motion to Dismiss will be denied.  Because the Complaint alleged sufficient facts and was addressed pursuant to Rule 12(b)(6), to the extent that Defendant's motion argues for Plaintiff to provide a more definite statement pursuant to Rule 12(e), such part of Defendant's motion will be denied.

An appropriate Order will be entered.

```
Date: September 2, 2022              /s Noel L. Hillman
At Camden, New Jersey               NOEL L. HILLMAN, U.S.D.J.
```